# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ANTONIO RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 23-CV-622-JPS<br><br>**ORDER** |

## 1.   INTRODUCTION

On May 16, 2023, Petitioner Antonio Rodriguez ("Petitioner") moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1. The Court screened the motion in accordance with Rule 4 of the Rules Governing § 2255 Proceedings, concluding that Petitioner's motion was timely and that four of his five asserted grounds for relief were not subject to procedural default and could therefore proceed. *See generally* ECF No. 4. All four of Petitioner's viable grounds for relief sound in ineffective assistance of counsel on the part of his trial counsel, Attorney Michael Steinle ("Steinle"). *Id.* at 1–2. The Court understands those grounds as follows: (1) Steinle failed to advise, inform, and advocate for the application of Safety Valve relief ("Ground One"); (2) Before advising Petitioner to plead guilty to Count One of the Indictment, Steinle failed to challenge the THC content of the marijuana ("Ground Two"); (3) Steinle failed to move to suppress the anticipated testimony of confidential sources on the ground that such testimony violated 18 U.S.C. § 201(c)(2) ("Ground Three"); and (4) Steinle was ineffective for failing to investigate the requirements of 18 U.S.C. § 924(c) ("Ground Four"). *Id.* at 2.

After receiving an extension of time, Respondent answered the motion, albeit in the form of a brief in opposition. ECF Nos. 5, 6, 7. Petitioner did not submit any additional briefing beyond that which he filed simultaneously with his motion. ECF No. 2. Notwithstanding a successful motion for an extension of time, ECF Nos. 10, 11, he has not filed any reply to Respondent's opposition.

The Court will now address the merits of Petitioner's § 2255 motion. For the reasons discussed herein, the Court will deny the motion and dismiss this case with prejudice.

## 2. BACKGROUND

Petitioner's § 2255 motion arises from his criminal proceedings before this Court in *United States v. Antonio Rodriguez,* 20-CR-185-8-JPS (E.D. Wis.).[1]

### 2.1 Investigation and Indictment

In the fall of 2020, Petitioner was charged in an extensive multi-defendant drug trafficking and money laundering case. CR-ECF No. 1. The complaint alleged that a group of individuals, including Petitioner, was involved in a large-scale drug trafficking organization ("DTO"), distributing marijuana, marijuana vape cartridges, and cocaine sourced from California. *Id.* at 12. The complaint identified Petitioner as an "ounce-level cocaine supplier in the Milwaukee, Wisconsin, area" and a "primary distributor for the . . . DTO" who regularly "use[d] various social media accounts in furtherance of the DTO's activities." *Id.* at 18, 23, 162.

Petitioner was originally arrested in February 2020 on an outstanding state arrest warrant for possession with intent to distribute cocaine and carrying a concealed weapon. *Id.* at 23; *see State of Wisconsin v.*

---

[1] Docket references thereto will be cited as CR-ECF.

*Antonio Rodriguez*, Case No. 2020CF000667 (Milwaukee County 2020), available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2020CF000667&countyNo=40&index=0&mode=details (last visited June 27, 2024) (hereinafter the "State Case") (listing disposition as "Venue Changed to Federal Court" and documenting dismissal of state case due to federal indictment). A search of Petitioner's residence as part of the State Case revealed thousands of dollars in cash, two pistols and a rifle, roughly 500 grams of cocaine and 20 grams of marijuana, and materials commonly used to package controlled substances. CR-ECF No. 2 at 23–24.

During the investigation, Petitioner and other DTO members were observed on multiple occasions coming and going from several known DTO stash houses "carrying . . . large boxes and bags . . . believe[d] [to be] associated with the DTO's marijuana trafficking." *Id.* at 35–36. Petitioner and other DTO members were also observed engaging in drug trafficking transactions around the stash houses. *Id.* at 245–46. As noted above, Petitioner used social media to further the DTO's activities and his role as a "DTO distributor[]"; specifically, Petitioner utilized a Snapchat account at which customers could contact him for drugs. *Id.* at 45–56. GPS surveillance of Petitioner's vehicle also revealed that Petitioner traveled to residences at which, and near which time, drug packages were delivered, leading law enforcement to believe he was picking them up and transporting them for the DTO. *Id.* at 151–52; 198. Phone calls and Snapchat messages between Petitioner and other DTO members were intercepted by law enforcement, further documenting Petitioner's involvement in the DTO. *Id*. at 163–66, 217. A search warrant executed on Petitioner's Snapchat account also revealed photos and videos of marijuana, marijuana vape cartridges, and guns. *Id.* at 166.

A grand jury indicted Petitioner in October 2020 on three counts: conspiracy to possess with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana (Count One);[2] knowing possession of three firearms in furtherance of the offense charged in Count One (Count Two); and possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine (Count Thirteen). CR-ECF No. 107; CR-ECF No. 327.

### 2.2 Pre-Plea & Plea Agreement

Petitioner was arraigned in October 2020, at which time he entered pleas of not guilty. CR-ECF No. 110. In November 2021, Steinle informed the Court by letter that Petitioner intended to plead guilty and that a plea agreement was in the works. CR-ECF No. 293. The following month, the parties filed a plea agreement, and shortly thereafter an amended plea agreement, providing that Petitioner would plead guilty to all three counts against him and that he agreed that the Government could prove the elements of the offenses and the facts, as recited herein, beyond a reasonable doubt. CR-ECF Nos. 324, 327 at 2–5. As part of the plea negotiations and agreement, the State of Wisconsin agreed to move to dismiss the state charges that were then pending against Petitioner. CR-ECF No. 669 at 23.

Tracking the criminal complaint, the plea agreement provides that Petitioner—a "primary distributor of marijuana and cocaine for the DTO"—"retrieved and transported packages containing controlled substances and distributed controlled substances on behalf of the DTO."

---

[2]Both the Court's judgment of conviction and amended version thereof erroneously reflect that Petitioner was convicted on Count One for conspiracy to possess with intent to distribute both cocaine and marijuana. CR-ECF Nos. 587, 631. Count One, at least to the extent it applies to Petitioner, involved only conspiracy with intent to distribute marijuana.

CR-ECF No. 327 at 8. It also notes, as the criminal complaint did, that a search of Petitioner's residence shortly before his arrest in February 2020 revealed over 500 grams of cocaine, several thousand dollars in cash, multiple firearms, multiple cell phones, roughly 20 grams of marijuana, and packaging materials commonly used in drug trafficking. *Id.* At the time of the February 2020 search, Petitioner was the subject of an outstanding felony warrant in the State Case after he was caught driving a stolen vehicle, a search of which revealed cocaine, heroin, cash, and a firearm. *Id.* at 8–9. In a Mirandized statement, Petitioner stated that "he sold cocaine and heroin" and "he described the location of the hidden contraband exactly as officers found it." *Id.* at 9.

### 2.3 Plea Colloquy

At Petitioner's Federal Rule of Criminal Procedure 11 plea colloquy, Petitioner orally "agree[d] to the facts as summarized in the plea agreement" and agreed that the Government could prove each of the required elements of the offenses to which he pleaded guilty beyond a reasonable doubt. CR-ECF No. 378; CR-ECF No. 669 at 12, 15–17. He averred that Steinle had "followed up with everything and sat down with [him] and read everything with [him] so that [he] could understand everything that's been going on." CR-ECF No. 669 at 9. Petitioner acknowledged that he understood that he faced mandatory minimum consecutive terms of imprisonment. *Id.* at 13–14.

The magistrate judge concluded that Petitioner understood his rights and the penalties involved and that his guilty plea was voluntary. CR-ECF No. 378.

### 2.4 Sentencing

Petitioner appeared for sentencing in April 2022. CR-ECF No. 735 at 1. At sentencing, Steinle confirmed that he had spent "a lot of time" with

Petitioner explaining that he was subject to "minimum mandatories" which would "take precedence" over the advisory guideline sentence. *Id.* at 5.

In his statement to the Court, Steinle emphasized Petitioner's young age, his learning disability, his lack of education, and the fact that the term of imprisonment he faced would be his first period of incarceration. *Id.* at 7–8. He described Petitioner's culpability as lesser because he was "easily manipulated by others," and told the Court that Petitioner was "not as significant of a player" in the DTO "as . . . the Government always made him" out to be. *Id.* at 8, 10.

3.   **STANDARD OF REVIEW ON HABEAS**

> A person serving a sentence imposed by a federal court who is
>
> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)). "[W]here the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief," the court need not hold an evidentiary hearing. *Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008) (quoting *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004)).[3]

---

[3]Such is the case here. Accordingly, the Court declines to hold an evidentiary hearing on this motion and instead disposes of it on the present record.

Page 6 of 17
Case 2:23-cv-00622-JPS   Filed 06/27/24   Page 6 of 17   Document 13

## 4. LAW & ANALYSIS

### 4.1 Ineffective Assistance of Counsel Generally

Courts apply the two-prong test, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate the effectiveness of counsel before trial, at trial, at sentencing, and on appeal. *See Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea" and at sentencing. *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) and citing *Hill v. Lockhart*, 474 U.S. 52, 58, 59 (1985)); *Eddmonds v. Peters*, 93 F.3d 1307, 1319 (7th Cir. 1996)).

"A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake*, 723 F.3d at 879 (citing *Strickland*, 466 U.S. at 687–88; *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011; and *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)). "[A] court does not need to address the *Strickland* prongs in any particular order. If one prong is found to be insufficient, the court need not address the other one." *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014) (citing *Strickland*, 466 U.S. at 697).

With respect to the first prong, the *Strickland* standard is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)). There is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *United States v. Trevino*, 60 F.3d 333, 338

(7th Cir. 2005) ("[B]ecause counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel.").

At the sentencing stage, counsel "must make a significant effort, based on reasonable investigation and logical argument, to mitigate his client's punishment." *Eddmonds*, 93 F.3d at 1319 (quoting *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996) and *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989)) (internal quotation marks omitted). "[C]ounsel may not treat the sentencing phase as nothing more than a mere postscript to the trial." *Kubat*, 867 F.2d at 369.

Meanwhile, the prejudice prong is not met merely by a showing that "counsel's errors might have had an effect on the outcome." *Ruhl*, 743 F.3d at 1091. Instead, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1091–92 (quoting *Strickland*, 466 U.S. at 694). At the plea stage, specifically, *Strickland*'s prejudice prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *Lafler*, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." (citing *Missouri v. Frye*, 566 U.S. 134, 148 (2011) and *Hill*, 474 U.S. at 59)).

"Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; and *Holman v. Gilmore*, 126 F.3d 876, 881–84 (7th Cir. 1997)). Accordingly, although the Court below addresses Petitioner's ineffective assistance of

counsel arguments individually for organizational purposes, the Court nevertheless considers Steinle's performance holistically.

### 4.2 Ground One

As to Ground One, Petitioner alleges that Steinle was constitutionally ineffective because he "failed to advise, inform, and advocate for the application of the Safety Valve relief." ECF No. 1 at 4; ECF No. 2 at 6. "Petitioner submits that he was eligible for the safety valve at the time of sentencing," but that Steinle failed to advocate for the applicability of such relief for Petitioner. ECF No. 2 at 7, 10 ("Had counsel advised the Court that Petitioner qualified for safety-valve provisions, there is a reasonable probability that the Court would have applied [it] and reduced his sentence below the mandatory minimum . . . .").

Respondent opposes Ground One on the simple basis that Petitioner was not, in fact, eligible for safety-valve relief. ECF No. 7 at 3. "One of the[] conditions [for safety-valve relief eligibility is] that the 'defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense.'" *Id.* at 3 (quoting 18 U.S.C. § 3553(f)(2)). Because Petitioner pleaded guilty to knowing possession of three firearms in furtherance of the offense charged in Count One (conspiracy to possess with intent to distribute 1,000 kilograms or more of a mixture and substance containing a detectable amount of marijuana), Respondent argues that Petitioner is not eligible for safety-valve relief and Steinle was not constitutionally ineffective for failing to advocate for such relief. Petitioner did not reply to dispute Respondent's contentions.

Respondent is correct, and the Court will deny Ground One. A defendant is "not entitled to a 'safety valve' reduction" when the defendant "possessed a firearm in connection with the offense or its relevant conduct." *United States v. Crater*, 79 F. App'x 234, 237 (7th Cir. 2003) (citing U.S.S.G.

§ 5C1.2(a)(2), cmt. n.3). In entering his pleas of guilty, Petitioner agreed that he was, in fact, guilty of the offenses charged—including conspiracy to possess with intent to distribute marijuana and knowing possession of firearms in furtherance thereof. He was, therefore, not eligible for safety valve relief. Accordingly, Steinle was not constitutionally ineffective for not arguing at sentencing that Petitioner should receive such relief. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims." (citing *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004) and *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996))); *Thompson v. Battaglia*, 458 F.3d 614, 618 (7th Cir. 2006) ("An attorney is not ineffective for failing to pursue a doomed line of inquiry . . . ." (citing *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) and *King v. Kemna*, 266 F.3d 824–25 (8th Cir. 2001) (en banc))).

### 4.3 Ground Two

Next, Petitioner contends that Steinle was constitutionally ineffective for failing to "challenge the THC content of the marijuana" before advising him to plead guilty to Count One because the THC content of the substance may have been "less than 0.3%" and "[t]he controlled substance may have been hemp." ECF No. 2 at 12–13. In opposition, Respondent points out that Petitioner pleaded guilty to conspiracy to possess with intent to distribute "a mixture and substance containing a *detectable amount* of marihuana;" that the evidence in the case showed that the DTO advertised the substance to customers as marijuana, not as hemp; that the marijuana recovered during the investigation field-tested positive for THC; and that confidential informants actually smoked it and did not complain about its potency or suggest that it was not, in fact, marijuana. ECF No. 7 at 4. In other words, Respondent contends, Steinle had no reason to think that he should seek to challenge the THC content of the marijuana.

The Court agrees and will accordingly deny Ground Two. As noted *supra* Section 4.2, counsel is not ineffective for failing to make an argument or raise a defense that has little to no likelihood of succeeding. Although Petitioner speculates baldly that the THC concentration of the substance could have been less than 0.3%, he points to nothing to support that speculation, and it is not even apparent that he himself believes it. And indeed, as Respondent argues, the record does not support that speculation; to the contrary, the circumstances of the investigation pointed to the substance not being hemp. *United States v. Liu*, No. 18 CR 162-1, 2022 U.S. Dist. LEXIS 10470, at *9 (N.D. Ill. Jan. 20, 2022) ("[T]he Government may prove a drug's identity through circumstantial evidence, including 'on-the-scene remarks by a conspirator identifying the substance as a drug; lay-experience based on familiarity through prior use, trading, or law enforcement; and behavior characteristic of drug sales.'" (quoting *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004))). Confidential sources in this case told law enforcement that Petitioner "sold marijuana products through Snapchat," that Petitioner assisted other DTO members with "unpack[ing] the boxes of marijuana," and that Petitioner was a "primary marijuana distributor," CR-ECF No. 327 at 12–13. Further, as Respondent notes, the marijuana that was recovered from the February 2020 search of Petitioner's residence was in "close proximity to several firearms," which are "generally not needed to protect a stash of hemp." ECF No. 7 at 4 n.1; CR-ECF No. 327 at 8. In light of these circumstances, Steinle had no reason to believe that seeking to challenge the THC content of the substance on which Count One was based would be worthwhile. Therefore, and given the "strong presumption" that counsel's decisions constitute reasonable litigation strategy, *Strickland*, 466 U.S. at 689 (citing *Michel*, 350 U.S. at 101), the Court will deny Ground Two.

### 4.4 Ground Three

As to Ground Three, Petitioner argues that Steinle was constitutionally ineffective for failing to move to suppress the anticipated testimony of confidential sources, some of whom he later discovered were co-defendants who agreed to offer testimony against Petitioner in exchange for recommendations for lower sentences. ECF No. 1 at 7; ECF No. 2 at 14–15. Petitioner avers that the anticipated testimony of these confidential sources, as set forth in his plea agreement, CR-ECF No. 327 at 12–14, was untruthful and only provided "in order to receive a lesser sentence." ECF No. 2 at 14. He argues that he "did not have any other choice than to agree with what was recited in the factual basis for the plea" because Steinle failed to move to suppress their anticipated testimony on the ground that such testimony violated 18 U.S.C. § 201(c)(2). *Id.*

Respondent opposes this ground simply on the basis that 18 U.S.C. § 201(c)(2) "does not restrict the government's ability to grant sentencing credit for cooperating witnesses who provide *truthful* testimony that substantially assists in the prosecution of others." ECF No. 8 at 5 (quoting *United States v. Febus*, 218 F.3d 784, 796 (7th Cir. 2000)).

The Court will deny this ground. Section 201(c)(2) provides that whoever "gives, offers, or promises anything of value," whether directly or indirectly, to any person because of or in exchange for that person's testimony under oath, "shall be fined . . . or imprisoned . . . , or both." 18 U.S.C. § 201(c)(2). The Seventh Circuit has held that "[f]orgoing criminal prosecution (or securing a lower sentence) is not a 'thing of value' within the meaning of § 201(c)(2)," *United States v. Condon*, 170 F.3d 687, 689 (7th Cir. 1999), and has rejected the argument that "18 U.S.C. § 201(c)(2) precludes testimony from government witnesses who were promised leniency in exchange for their cooperation." *United States v. Tabb*, No. 97-

1306, 2000 U.S. App. LEXIS 7258, at *14 (7th Cir. Apr. 17, 2000) (citing *United States v. Barrett*, 505 F.2d 1091, 1100–03 (7th Cir. 1974) and *Condon*, 170 F.3d at 688–89); *see also Infelese v. United States,* No. 97 C 8277, 1999 U.S. Dist. LEXIS 541, at *26–27 (N.D. Ill. Jan. 5, 1999) (rejecting petitioner's argument that "the government violates 18 U.S.C. § 201(c)(2) if it offers to help a witness obtain a lesser prison sentence in exchange for truthful testimony" as inconsistent with "binding Seventh Circuit precedent") (citing *Barrett*, 505 F.2d 1091). Steinle was not, therefore, constitutionally ineffective for not seeking suppression based on this argument, which has been flatly rejected in this Circuit. *See Jackson v. City of Peoria,* 825 F.3d 328, 331 (7th Cir. 2016) ("Lawyers are not entitled to ignore controlling, adverse precedent."); *Baenen*, 712 F.3d at 1104 (citations omitted).

### 4.5    Ground Four

Lastly, Petitioner alleges that Steinle was constitutionally ineffective for failing to investigate the requirements of 18 U.S.C. § 924(c). ECF No. 1 at 8. Specifically, Petitioner avers that, had Steinle properly investigated, he would have concluded that the requirements of § 924(c) were not met because "Petitioner was asleep upstairs with the guns in the drawers and the drugs were unprotected downstairs next to the back door." *Id.*; ECF No. 7 at 5 (Respondent's opposition) ("Petitioner believes that [Steinle] ought to have pressed an argument that he did not possess the firearms in [C]ount [T]wo 'in furtherance of' drug-trafficking because the guns were not 'strategically placed' to protect drugs.").

The Court will deny this ground. Petitioner is precluded from making it because he already agreed under oath, during his plea colloquy, that the Government could prove each element of Count Two—possession of a firearm during and in relation to a drug trafficking crime—beyond a reasonable doubt. CR-ECF No. 327 at 16. He does not now argue that his

plea was unknown, involuntary, or unintelligently entered. He has accordingly given up his opportunity to argue that the Government could not have proven that he was guilty of the § 924(c) charge beyond a reasonable doubt. *Torzala,* 545 F.3d at 524 ("[The petitioner] gave up the ability to hold the government to its proof when he entered his pela of guilty." (citing *United States v. Broce*, 488 U.S. 563, 571 (1989))).

Even if he had not forfeited his opportunity to make such an argument, it would nevertheless fail. It is true that "the mere presence of a firearm at the scene" is "not enough" to support a § 924(c) charge. *United States v. Vaughn*, 585 F.3d 1024, 1029 (7th Cir. 2009) (citing *United States v. Castillo*, 406 F.3d 806, 814–15 (7th Cir. 2005)). There must be, instead, "a showing of some nexus between the firearm and the drug selling operation." *United States v. Duran*, 407 F.3d 828, 840 (7th Cir. 2005) (quoting *United States v. Gaston*, 357 F.3d 77, 83 (D.C. Cir. 2004)).

The record in this case demonstrates "through specific facts" that Petitioner was "tie[d] . . . to the firearm[s]" and that they were "possessed to advance or promote the criminal activity." *Castillo*, 406 F.3d at 814 (quoting H.R. Rep. 1997 WL 668339, at *11–12). The search of Petitioner's residence, which formed the basis of Count Two, revealed cocaine, thousands of dollars in cash, multiple firearms, multiple cell phones, marijuana, and drug packaging materials, all of which is indicative of trafficking. CR-ECF No. 327 at 8; *United States v. Bentley*, 795 F.3d 630, 638 (7th Cir. 2015) (multiple cell phones and large amounts of cash are circumstantial evidence of involvement in drug trafficking) (citations omitted). Respondent also represents that, according to police reports of that search, the guns were "found in [P]etitioner's bedroom, along with" cash and drugs. ECF No. 7 at 5; *see Duran,* 407 F.3d at 840 (listing "proximity

Page 14 of 17
Case 2:23-cv-00622-JPS     Filed 06/27/24     Page 14 of 17     Document 13

to drugs or drug profits" as relevant factor) (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 4141–15 (5th Cir. 2000)).

Other portions of the record in this case further support the conclusion that Petitioner did, in fact, possess firearms in furtherance of drug trafficking; a search of his Snapchat account revealed photos and videos of drugs and firearms, CR-ECF No. 327 at 10, and confidential sources to whom Petitioner sold drugs told law enforcement that Petitioner carried a gun and was armed during the transactions, *id.* at 13. For all these reasons, it was fairly apparent that Petitioner "did not possess the gun[s] innocently, but rather to protect himself, his stash, and his profits." *United States v. Huddleston*, 593 F.3d 596, 602 (7th Cir. 2010). Steinle was not, therefore, constitutionally ineffective for failing to argue that the requirements of § 924(c) were not met in this case.

5.  **CONCLUSION**

Petitioner has not demonstrated "that his trial counsel's performance fell below objective standards for reasonably effective representation," let alone that any alleged deficiency "prejudiced the defense." *Blake*, 723 F.3d at 879 (citing *Strickland*, 466 U.S. at 687–88; *Jones*, 635 F.3d at 915; and *Wyatt*, 574 F.3d at 457). Accordingly, the Court will deny his § 2255 motion with prejudice.

The Court must address one additional matter. Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The petitioner "need not show he is likely to prevail, but he must show that 'reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

In light of the well-settled principles governing the disposition of Petitioner's grounds for relief, as outlined above, the Court cannot fairly conclude that reasonable jurists would debate whether his motion should be decided differently; as a consequence, the Court must deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Antonio Rodriguez's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice.**

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of June, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine all applicable rules and determine what, if any, further action is appropriate in a case.